FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT

2016 SEP -7 AM 5: 37

CLERK 18

BY _____ DC

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X John Saint  ☒ Agent  ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery<br>J M Burnett                       8/29 |
| 1. Article Addressed to:<br><br>GOODWILL INDUSTRIES OF KY, INC<br>1325 S. FOURTH STREET<br>LOUISVILLE, KY 40208<br>16CI004090<br><br>‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 2115 6132 4977 59 | D. Is delivery address different from item 1?  ☐ Yes<br>   If YES, enter delivery address below:    ☐ No<br><br><br><br>3. Service Type<br>☐ Adult Signature                    ☐ Priority Mail Express®<br>☐ Adult Signature Restricted Delivery ☐ Registered Mail™<br>☐ Certified Mail®                    ☐ Registered Mail Restricted Delivery<br>☐ Certified Mail Restricted Delivery ☐ Return Receipt for Merchandise<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation™<br>   Mail                              ☐ Signature Confirmation Restricted Delivery<br>   Mail Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7016 0750 0000 6019 4114 | |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

FILED IN CLERK'S OFC.
JEFFERSON CIRCUIT CT.

2016 SEP -7 AM 9:28

CLERK 5

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits.   SC 4 | A. Signature <br> X _(signature)_   ☐ Agent  ☐ Addressee <br> B. Received by (Printed Name)  Amy Luttrell   C. Date of Delivery 9/1/16 |
| 1. Article Addressed to: <br> GOODWILL INDUSTRIES OF KY, INC <br> AMY LUTTRELL <br> 1325 S. FOURTH STREET <br> LOUISVILLE, KY 40208 <br> 16CI004090 | D. Is delivery address different from item 1?  ☐ Yes <br> If YES, enter delivery address below:  ☐ No <br> RESTRICTED DELIVERY |
|  <br> 9590 9402 2115 6132 4977 66 | 3. Service Type <br> ☐ Adult Signature <br> ☐ Adult Signature Restricted Delivery <br> ☐ Certified Mail® <br> ☒ Certified Mail Restricted Delivery <br> ☐ Collect on Delivery <br> ☐ Collect on Delivery Restricted Delivery <br> ☐ Insured Mail <br> ☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express® <br> ☐ Registered Mail™ <br> ☐ Registered Mail Restricted Delivery <br> ☐ Return Receipt for Merchandise <br> ☐ Signature Confirmation™ <br> ☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label) <br> 7026 0750 0000 2019 4107 | | |

PS Form 3811, July 2015

NO._____

JEFFERSON CIRCUIT COURT
DIVISION _____
JUDGE _____

**KIMIKO SCHLENK**                                                              **PLAINTIFF**
**1877 BROWNSBORO RD**
**LOUISVILLE KY, 40206**

v.                                   **VERIFIED COMPLAINT**

**GOODWILL INDUSTRIES OF KENTUCKY, INC.**                    **DEFENDANT**
**1325 SOUTH FOURTH STREET**
**LOUISVILLE, KY 40208**

   **SERVE:  AMY LUTTRELL**
**1325 SOUTH FOURTH STREET**
**LOUISVILLE, KY 40208**

**JURY FEE PAID**

***** ***** *****

   Comes the Plaintiff, Kimiko Schlenk, (herein after "Ms. Schlenk" or "Plaintiff") by counsel and for her Complaint against Defendant, Goodwill Industries of Kentucky INC. (hereinafter "Goodwill" or "Defendant") and states as follows:

### JURISDICTION AND VENUE

1. The Plaintiff lives and resides at 1877 Brownsboro Road, Louisville, Kentucky 40206 and is a resident of Jefferson County, Kentucky.

2. The Plaintiff was employed at Goodwill Industries of Kentucky, Inc., located at 1325 South Fourth Street Louisville, Kentucky 40208

3. The Defendant, Goodwill Industries of Kentucky, Inc. is a Kentucky Corporation with its principle office located at 1325 South Fourth Street Louisville, KY 40208.

4. Ms. Schlenk's causes of action are brought pursuant to the Fair Labor Standards Act, the Kentucky Civil Rights Act, KRS 344 *et seq.*, and the common law of the Commonwealth of Kentucky in addition her damages exceed the threshold requirement of Five-Thousand Dollars ($5,000.00) therefore this court has proper jurisdiction over the matter

## FACTUAL ALLEGATIONS

5. Ms. Schlenk worked for Goodwill from 2002 through 2010 as a store manager at several different Kentucky locations and again in 2015 as a store manager.

6. During this time period the stores that Ms. Schlenk worked at were either always top performers in the applicable region or saw vast improvement in sales from the previous management.

7. In 2010, Ms. Schlenk left Goodwill on good terms to pursue other career opportunities.

8. Ms. Schlenk's last job prior to returning to Goodwill was as an over the road transporter.

9. Ms. Schlenk owned her own truck, a 2005 Chevrolet Duramax Diesel.

10. Around July of 2015, Goodwill contacted Ms. Schlenk and requested that she come back to Louisville and become the manager of a new store that was about to open.

11. Although Ms. Schlenk knew that accepting the offer would entail having to take a pay cut and sell her truck, she ultimately decided to return to Goodwill.

12. Ms. Schlenk, relying on Goodwill's offer of employment, accepted the job, sold her truck and returned to Louisville.

13. Immediately upon her return Ms. Schlenk noticed significant changes within the Goodwill organization.

14. Although Ms. Schlenk's official title with Goodwill was store manager her duties within the store were almost completely the same as hourly employees.

15. However, unlike the majority of Goodwill's hourly employees who were limited to working 25-29 hours a week on average due to their disabilities and transportation availability, Ms. Schlenk would spend sixty-five hours a week at Goodwill. She would often be forced to spend more than seventy hours a week working.

16. Additionally, ninety percent of Ms. Schlenk's time in the store was spent doing jobs or duties that were non-managerial in nature.

17. Ms. Schlenk would work the cash register; clean the grounds, pick up cigarette butts, clean and organize the store and stock shelves.

18. In addition to the above Ms. Schlenk would spend the majority of her day taking donations, sorting the donations and pricing the donations along with the hourly employees.

19. Goodwill's policy at the time was that two thousand five hundred pieces of donated textiles had to be sorted, priced and stocked a day in addition to 18 wares carts priced and put out for sale. On average Ms. Schlenk's store would receive over 1000 donations a week.

20. Sorting, pricing and stocking donations was a full time job in and of itself yet Ms. Schlenk was forced to complete it along with her other duties.

21. Ms. Schlenk only spent approximately ten percent of her day doing managerial duties such as directly supervising employees, scheduling, reviewing time punches, responding to emails and ordering supplies.

22. Ms. Schlenk was only allowed limited freedom in scheduling employees; she could not authorize the majority of her staff to go over forty hours due to their supplemental income requirements.

16-CI-004090    08/24/2016    David L. Nicholson, Jefferson Circuit Clerk

23. If she needed someone to go over 40 hours Ms. Schlenk would have to get Dana Torcy or Lennea Wooten, the Director of West Region retail to approve and schedule them.

24. Ms. Schlenk was also not authorized to hire or fire employees and as a result her store was constantly under staffed.

25. Goodwill employed a private HR company, Insipio, to accept and review applications, conduct interviews and then hire employees with the approval of Ms. Schlenk's supervisors. They generally did not ask for any input from Ms. Schlenk or relay the criminal background of individual to her regardless of the fact that Ms. Schlenk would be working with and training the new employees on a daily basis.

26. Only on one occasion during the time that Ms. Schlenk was with Goodwill was her input provided during the hiring process. However, during those times the HR Company had already interviewed the employees and accepted them for employment. Ms. Schlenk's only role was asking the potential new employees a list of questions that were given to her by Goodwill in advance.

27. Ms. Schlenk believes that her input did not matter and that Goodwill would have hired the employees regardless of her recommendation.

28. This belief was proved correct when Ms. Schlenk's only assistant manager Amy Hickerson was terminated for coming up short on her cash register by fewer than fifty dollars.

29. Because Ms. Schlenk knew that her Amy was a hard worker and had simply made a simple mistake she did not want her to be terminated.

30. Ms. Schlenk made the recommendation that Amy be demoted instead of fired. Goodwill proceeded to fire the Amy disregarding Ms. Schlenk's request.

31. As a "Store Manager" Ms. Schlenk had little freedom or authority. She was visited multiple

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000004 of 000013

16-CI-004090    08/24/2016    David L. Nicholson, Jefferson Circuit Clerk

times each week, by Goodwill management and Goodwill developmental teams who would direct the stores daily operations.

32. The Developmental team led by David Cobb would direct the stores placement of product and how the store was organized. Additionally they would order Ms. Schlenk to go and pick up trash in the parking lot, retrieve shopping carts, pick up cigarette butts, and to organize specific displays.

33. David and Heather would constantly harass Ms. Schlenk about carts being outside, donations being outside, trash being outside and dust around the store. Because the store was so understaffed Ms. Schlenk would have to correct these issues herself.

34. Ms. Schlenk's managers, including her regional manager Mark Daniels, the Director of West Region retail Lennea Wooten and John Wade the vice president of Logistics and Retail would micro-manage the day to day operations of the store directing Ms. Schlenk's with regard to personnel and store operations.

35. Ms. Schlenk salary when broken down to an hourly rate, based on a 40-hour workweek came out to approximately $16.82. Additionally Ms. Schlenk received a commission based on 1% of the monthly sales of the store and 3% of hourly employee's gross pay per month.

36. However when Ms. Schlenk's salary is broken down based on the hours she actually worked (at least 65 a week) her pay equaled less than $11 an hour. Even with her commission added in Ms. Schlenk still makes less per hour than her assistant store manager and senior Goodwill hourly employees.

37. Moreover Ms. Schlenk was the only employee in the store who was paid a salary.

38. The pay of the Employee's that Ms. Schlenk worked with ranged from $8.20 an hour to around $14.00 an hour for the store's assistant manager.

Filed            16-CI-004090    08/24/2016        David L. Nicholson, Jefferson Circuit Clerk

39. When Ms. Schlenk's management duties are compared with her non-management duties the importance of the non-managerial duties far outweighed the importance of the managerial duties.

40. If Ms. Schlenk were to stop performing the non-managerial duties store operations would grind to a halt. However if she were to stop doing the limited managerial duties she had her supervisors would step in (as they had done in the past) and ensure that people were scheduled and hired and fired.

41. When viewed from the totality of the circumstances it is clear that Ms. Schlenk's primary duty was not management.

42. After Ms. Schlenk's first assistant manager, Amy, was fired by Goodwill for the cash shortage incident, Goodwill transferred Magin Marshall to her store. Unfortunately, after working for a few weeks Magin injured her foot returning from work and had to take a leave of absence.

43. This caused Ms. Schlenk to be even more understaffed, forcing her to perform even more non-managerial duties during the day.

44. After a month with no assistant manager Goodwill finally promoted Cheryl Brogan to fill the stores second assistant manager position.

45. Unfortunately Cheryl Brogan was a convicted felon, she had been charged with arson and attempted murder. Ultimately she was convicted of second-degree arson and first-degree wanton endangerment and sentenced to 25 years in prison.

46. Ms. Schlenk was told by senior management that it was against Goodwill's policies and procedures to promote or or hire someone convicted of arson into a management position but that she could get around the red tape and promoted Cheryl anyways.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)
COM : 000006 of 000013
16-CI-004090    08/24/2016        David L. Nicholson, Jefferson Circuit Clerk

47. Despite being placed in a difficult position by Goodwill, Ms. Schlenk's store consistently outperformed all others in the Louisville Region.

48. Ms. Schlenk's total sales were higher than all other stores in the Louisville Region.

49. During the course of her employment with Goodwill Ms. Schlenk never received a verbal or written warning about any non-satisfactory job performance.

50. On December 16, 2015, her manager, Mark Daniels called her into the office. He informed her that she had been accused of sexual harassment and was suspended pending an investigation. Mark informed her that these allegations were based on video clips from store security cameras and "someone's perception" of what had occurred.

51. The video showed Ms. Schlenk talking with her assistant managers in the office, giving one a hug and brushing out their hair.

52. Ms. Schlenk was told that the incidents were brought up to Goodwill Management by security when the stores video footage was reviewed.

53. Ms. Schlenk was surprised and distraught by these accusations and the suspension.

54. The Stores security footage clearly showed conduct that did not rise to the level of harassment as defined by Goodwill's employee handbook or any common definition of the term. In fact, Ms. Schlenk had received hugs from Goodwill senior management on several occasions.

55. Additionally, Goodwill had a progressive discipline policy that mandated that Ms. Schlenk first be warned verbally, and then in writing, prior to being suspended or terminated. Ms. Schlenk received neither a written or verbal warning.

56. Ms. Schlenk attempted to explain to Mark that the hair brushing incident occurred when Ms. Schlenk, Cheryl Brogan, and Magin Marshall were discussing hairstyles and haircuts. At the

time of the incident Cheryl and Magin did not ask Ms. Schlenk to stop, never told her it was making them uncomfortable nor did they attempt to leave. In fact Magin stated "I love it when someone else brushes my hair."

57. Mark refused to listen to Ms. Schlenk's explanation and told her to turn in all of her keys and all Goodwill property. He then informed her that she was being suspended pending investigation into the alleged sexual harassment.

58. Ms. Schlenk was devastated but believed that Goodwill would conduct a fair investigation.

59. Unfortunately that belief was shattered seconds later, as Ms. Schlenk was leaving the store from the meeting with management she saw Mark's protégé and personal friend Terry Conwell, a male Goodwill manager from another store, walking in to the store.

60. Later that day Terry was announced to the stores staff as the new store manager.

61. Ms. Schlenk believes that she was in reality terminated because of her Sexual Orientation and Gender. The fact that Terry Conwell replaced her only furthered this belief. This belief was further solidified when shortly after taking over Ms. Schlenk's store, Terry was provided full staffing for the store. This was something Ms. Schlenk never had while manager.

62. On December 24, 2015, Ms. Schlenk received a letter from Goodwill stating that she was being terminated for violating Goodwill's "Anti-harassment, Discrimination and Retaliation Policy."

63. Several weeks later Ms. Schlenk was provided with a letter from one of her former employee's, John Brandon, that stated that Cheryl Brogan had admitted to him, unprompted, that she had filed a hostile work environment and sexual harassment claim against Kim Schlenk. When John asked her why she had filed the Complaint she stated that it was

Filed        16-CI-004090    08/24/2016        David L. Nicholson, Jefferson Circuit Clerk

because her husband had divorced her, took her kids and then "came out of the closet," she then stated that she was Homophobic, blaming the collapse of her marriage on homosexuality. "Attached as Exhibit A"

64. Although not advertised, Ms. Schlenk's sexual orientation was well known at Goodwill.

65. When Ms. Schlenk was fired her Regional Manager, Mark replaced her with one of his protégés, Terry Conwell, a male.

66. Terry replacing her as manager further proved to Ms. Schlenk that she was terminated because of her Gender and Sexual Orientation.

67. Moreover, Ms. Schlenk was made aware of the fact that Terry Conwell was accused of sexual harassment and discrimination but instead of being fired or suspended he was transferred to another store. An opportunity that Goodwill apparently did not give to female, non-heterosexual employees.

68. Ms. Schlenk believes that Mark was looking for any reason to terminate her and replace her with a male.

69. Prior to and since her termination Ms. Schlenk has suffered immensely.

70. She is constantly anxious and worried that because of her gender she will be treated differently than other persons by not getting the same opportunities. She has struggled to find work and been forced to accept a job at a much lower pay rate.

71. The entirety of the facts suggest that Goodwill, through management, labeled Ms. Schlenk as an exempt employee in order to avoid paying her overtime wages and discriminated against her in violation of the Kentucky Civil Rights Act.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000009 of 000013

9

Filed        16-CI-004090    08/24/2016        David L. Nicholson, Jefferson Circuit Clerk

## COUNT I. VIOLATION OF THE FLSA; 29 U.S.C.S §201 et seq.

72. Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through Seventy-One (71) above, as if fully set forth with particularity herein;

73. 29 U.S.C.S §201 et seq. states that to qualify, as an executive under the Fair Labor Standards Act the plaintiff must;

74. Be paid more that $455 per week,

75. Have management of the enterprise as her "primary duty,"

76. Regularly direct two or more employees, and

77. Have authority to hire or fire other employees or to make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees that are given a particular weight.

78. The Plaintiff has shown that management of the enterprise was not her primary duty and that she did not have the authority to hire or fire, nor were her suggestions and recommendations given any weight.

79. Therefore Plaintiff should not have been categorized as an exempt employee and should have received overtime for hours worked in excess of 40 hours per week.

## COUNT II. DISCRIMINATION BASED ON GENDER

80. Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through seventy-nine (79) above, as if fully set forth with particularity herein;

81. That KRS 344.040(1) makes it unlawful for an employer, "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's ...gender,"

Filed          16-CI-004090     08/24/2016          David L. Nicholson, Jefferson Circuit Clerk

82. That as a Female, Plaintiff was a member of a protected class;

83. That Plaintiff was qualified for the position she held and her performance was satisfactory;

84. That an employee outside of the protected class was selected for the Position that the Plaintiff was fired from.

85. That the actions taken by Goodwill were due to Plaintiff's gender, are in violation of KRS 344, and establish a *prima facie* case of gender discrimination against Defendant Goodwill.

## COUNT III. PROMISSORY ESTOPPEL

86. Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through eighty-five (85) above, as if fully set forth with particularity herein;

87. That Defendant Goodwill made a promise of continued employment to Plaintiff and that there facilities would abide by the anti discriminatory policies implemented in the Employee Handbook;

88. That Defendant Goodwill should have reasonably expected Plaintiff to rely on this promise;

89. That Plaintiff, to her detriment, did, in fact rely on this promise;

90. That injustice can only be avoided if Defendant Goodwill is required to fulfill its promises;

91. That due to Defendant Goodwill's failure to honor its promises, the Plaintiff has, and will continue to suffer damages in the form of lost wages, benefits, and pain and suffering, embarrassment, mortification of feelings and should be made whole;

## COUNT IV NEGLIGENT HIRE

92. The Plaintiff hereby incorporates herein each and every allegation of paragraphs one (1) through ninety-two (92) above as willfully set forth with particularity herein;

93. Cheryl Brogan was unfit for the job for which she was employed;

94. The Defendant, Goodwill, knew or should have known that Cheryl had a propensity to cause

11

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000011 of 000013

Filed          16-CI-004090     08/24/2016          David L. Nicholson, Jefferson Circuit Clerk

harm to others;

95. Goodwill could have reasonably discovered Cheryl Brogan's propensities;

96. Cheryl Brogans hiring and retention created an unreasonable risk of harm to others including the Plaintiff;

97. The Defendant Goodwill failed to properly supervise Cheryl Brogan, creating an unreasonable risk of harm to the Plaintiff;

98. Cheryl Brogans defamatory statements and false allegations against the Plaintiff, were foreseeable;

99. Goodwill's wrongful action's caused the Plaintiff harm in the form of lost wages, lost benefits, and caused her pain and suffering specifically: uncertainty, anxiety, apprehension for her future, and humiliation.

## PRAYER FOR RELIEF

100. The Plaintiff herby incorporates herein each and every allegation of paragraphs one (1) through nincty-nine (99) above as willfully set forth with particularity herein.

WHEREFORE, Ms. Schlenk, prays that this Court:

101. Declare Goodwill's conduct in violation of Ms. Schlenk's rights;

102. Award Ms. Schlenk compensatory damages in such amounts as shall be proved at trial for her economic and other losses;

103. Award Ms. Schlenk damages in an amount to be proved at trial for the humiliation, embarrassment, personal indignity, apprehension about her future, emotional distress, and mental anguish, which the Defendants caused Ms. Schlenk by their illegal, and discriminatory acts towards her:

12

Filed          16-CI-004090    08/24/2016         David L. Nicholson, Jefferson Circuit Clerk

104. Award Ms. Schlenk costs, interest, and attorneys' fees pursuant to KRS 344; and

105. Grant her such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Ms. Schlenk demands a jury to try all issues triable by jury.

Respectfully submitted,

s/ Samuel G. Hayward
Samuel G. Hayward
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000013 of 000013

Filed          16-CI-004090    08/24/2016         David L. Nicholson, Jefferson Circuit Clerk
Filed          16-CI-004090    08/24/2016         David L. Nicholson, Jefferson Circuit Clerk

Filed        16-CI-004090    08/24/2016        David L. Nicholson, Jefferson Circuit Clerk

## VERIFICATION

I have read the foregoing statements and they are true and accurate to the best of my knowledge and belief.

_____
Kim Schlenk

COMMONWEALTH OF KENTUCKY  )
                          )ss
COUNTY OF JEFFERSON       )

Subscribed and sworn to before me by Kimiko Schlenk, this ___ day of _____, 2016.

_____
Notary Public
State at Large, Kentucky
My Commission Expires: 2/27/2018

14

Filed        16-CI-004090    08/24/2016        David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

MiS : 000001 of 000001

| AOC-E-105   Sum Code: CI |  | Case #: **16-CI-004090** |
|---|---|---|
| Rev. 9-14 | | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | County: **JEFFERSON Circuit** |
| Court of Justice   Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff*, **SCHLENK, KIMIKO VS. GOODWILL INDUSTRIES OF KENTUCKY, INC.**, *Defendant*

TO:  **GOODWILL INDUSTRIES OF KENTUCKY, INC.**
     **1325 SOUTH FOURTH STREET**
     **LOUISVILLE, KY 40208**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ David L. Nicholson, Jefferson Circuit Clerk
Date: **08/24/2016**

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

7016 0750 0000 2019 4114

[U.S. Postal Service Certified Mail Receipt form]

Service

(her initiating document)

Postmark Here

_____
Served By

_____
Title

CI : 000001 of 000001

Summons ID: @00000791689,
CIRCUIT: 16-CI-004090 Certified Mail
SCHLENK, KIMIKO VS. GOODWILL INDUSTRIES OF KENTUCKY, INC.



Page 1 of 1

**eFiled**

| | | |
|---|---|---|
| AOC-E-105   Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice   Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **16-CI-004090**<br>Court:   **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **SCHLENK, KIMIKO VS. GOODWILL INDUSTRIES OF KENTUCKY, INC.**, *Defendant*

TO:  **AMY  LUTTRELL**
     **1325 SOUTH FOURTH STREET**
     **LOUISVILLE, KY 40208**

The Commonwealth of Kentucky to Defendant:
**GOODWILL INDUSTRIES OF KENTUCKY, INC.**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ David L. Nicholson, Jefferson Circuit Clerk
Date: **08/24/2016**



Proof of Service

(or other initiating document)

_____
Served By

_____
Title

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

Summons ID: @00000791690,
CIRCUIT: 16-CI-004090 Certified Mail
SCHLENK, KIMIKO VS. GOODWILL INDUSTRIES OF KENTUCKY, INC.

Page 1 of 1

**eFiled**