UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
*Electronically Filed*

| | | |
|---|---|---|
| KIMIKO SCHLENK | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 3:16-cv-00601-JHM-CHL |
| | ) | |
| GOODWILL INDUSTRIES OF | ) | |
| KENTUCKY, INC. | ) | Judge Joseph H. McKinley, Jr. |
| | ) | |
| | ) | |
| DEFENDANTS | | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kimiko Schlenk, by counsel, hereby moves this court to deny Defendant's Motion for Summary Judgment on Plaintiff's remaining claims and to not dismiss her complaint. A proposed Order is attached hereto. The Plaintiff states as follows:

**I. INTRODUCTION**

Plaintiff, Kimiko Schlenk, was an employee of Goodwill who gave many years of service to the company. Plaintiff was fired due to an alleged violation of Goodwill's Anti-Harassment, Discrimination and Retaliation Policy. However, there still exists disputes regarding genuine issues of material fact in this case. The Defendant is not entitled to the relief that they seek because Defendant has failed to prove that there are no genuine issues of material fact that exist. Therefore, their Motion must be denied.

**II. PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

Goodwill hired Plaintiff, Kim Schlenk, in August 2015 to be the manager for its new Northfield store location. (Schlenk Deposition I, March 10, 2017, hereinafter "Schlenk I Depo",

attached as "Sealed Ex. 1., pg. 15-16[1]) Schlenk previously was employed with Goodwill from October 2002 to April 2010. (Schlenk Depo I, Ex. 1, pg. 15) Goodwill, specifically the regional manager at the time, reached out to Schlenk about the opportunity to work as the new manager at the new Northfield store, as Goodwill had expressed interest in Schlenk coming back to work for them. (Schlenk Depo I, Ex. 1, pg. 16) Schlenk did not actually apply for this position. (*Id*.) Schlenk interviewed for the position and was then hired. (*Id*.) Schlenk started training at the Brownsboro Rd. location in September 2015 until the opening of the Northfield Store in October 2015. (Schlenk Depo I, Ex. 1, pg. 35,41) Schlenk was later terminated from her employment in December 2015. (Schlenk Depo I, Ex. 1, pg. 15)

**A. Schlenk's Duties Included Many Duties of Non-Management**

Throughout her employment with Goodwill in 2015, Schlenk's store was constantly understaffed and Schlenk was doing the job duties of multiple people while also being micromanaged about the store. (Schlenk Depo I, Ex. 1, pg. 94-96). Schlenk was not only responsible for her own duties, but responsible for practically the duties of all other employees.

Q: Do you think they were intentionally keeping your store understaffed?

A: I just don't think they were prepared.

Q: Okay.

A: Honesty, I do not think they were prepared for the volume that we took in. We didn't have enough people when we first went there. Even though if you look at a schedule that has 16 people, maybe three of those people out of that whole schedule can function to meet their expectations on a daily basis, hanging and wares.

Q: Okay.

A: I'm trying to help you understand --

Q: Sure.

---

[1] As Defendant has done, Plaintiff is filing simultaneously herewith a Motion to File Exhibits Under Seal because they contain confidential information. Plaintiff will file these documents under Seal with a motion and proposed order.

A: -- the people with the disability, the person that priced wares was of elderly and could -- and had physical disability. it was easier for her at the Brownsboro Road store because it was very small. Then you take and move everybody to a location that's three times that size.

Q: Okay.

A: They weren't able to do it.

Q: Okay.

A: Not --not on a-- you know, it was due to their disability --

Q: Sure.

A: --you know. And I'm going to try to not to get emotional, but they did their best.

Q: Uh-huh (affirmative). Okay.

A: So, in order to support them and help them, I did everybody's job. Because if I didn't do everybody's job, we didn't have the people to -- you know, we had two cashiers, one that was an employee, one that was through GTS. We were so desperate for cashiers. They're still desperate for cashiers.

Q: So the manager job is a full-time job, and you're essentially taking on other jobs also--

A: Yes, ma'am.

Q: --the full-time job?

A: Donations, pricing, sorting, picking up the floor. I mean, it was --it was-- you're trying to do 16 people's job on a daily basis to meet the flagship, if you will, want to be Macy's store. I think we did an overwhelmingly excellent job.

(Schlenk Depo I, Ex. 1, pg. 99, 94) Schlenk did not have an appropriate team to facilitate all the responsibilities and job duties and was completing the jobs of most other employees. (Schlenk Depo I, Ex. 1, pg. 96).

**B. Complaints About Schlenk**

Many complaints made about Schlenk were because Schlenk was following Goodwill's own policies. The Defendant states that Schlenk admitted that two customers had made complaints about her to upper management, and that Schlenk was referred to as "Little Hitler", but this occurred because a customer had been caught by Schlenk putting items in a box that the customer had not

paid for with merchandise that had been purchased. (Schlenk Depo I, Ex. 1, pg. 171-172) The customer pulled up to the store to have items loaded in her vehicle because they were too heavy to be carried out and Schlenk was following company policy and asked to check the customer's receipt. (Schlenk Depo I, Ex. 1, pg. 172) When Schlenk asked for the proof of purchase, Schlenk could tell the customer had loaded more items into her box than she had paid for. (Schlenk Depo I, Ex. 1, pg. 170-171) Further, the complaints that Schlenk remembered receiving were generally due to "dealers" being upset alleging that items were not being put out in the sales floor for purchase and instead being held in the back room. (Schlenk Depo I, Ex. 1, pg. 181) Schlenk did have a counselor meeting set up with an internal Goodwill counsel, which she felt was a good idea because of the amount of stress her job was putting on her, by doing the jobs of multiple employees, which she was not able to attend due to the busy schedule she had at work. (Schlenk Depo I, Ex. 1, pg. 178)

**C. Termination**

Schlenk was terminated in December 2015 due to an alleged violation of their Anti-Harassment, Discrimination, and Retaliation Policy. However, once Schlenk had been terminated, a Goodwill employee, C.B[2]. bragged about falsely complaining that she had been sexually harassed by Schlenk. (Brandon Deposition, June 9, 2017, hereinafter "Brandon Depo", attached as "Sealed Ex. 2., pg. 25)

> A: The day she [Schlenk] got fired, an individual I worked with came. . . to me, ha, ha, ha, I did it. I called and said that she was sexually harassing me, you know, and all this stuff. (Brandon Depo, Ex. 2, pg. 25) Brandon further states:
>
> Q: Okay. Who was the person that told you that?
>
> A: C.B. (Brandon Depo, Ex. 2, pg. 26)

Mr. Brandon went on to state that C.B. bragged about getting Schlenk fired:

---

[2] As Goodwill referred throughout their memorandum to various employees, former employees, and job candidates by their initials, in order to protect their privacy, Plaintiff has done the same. As Goodwill has done, Plaintiff is also tendering, along with this response to Defendant's motion for summary judgment, a motion to file certain records identifying non-party employees under seal.

A: She's like, I'm the one that got Kim fired. I'm like well, what did you do? She's like, well, she's gay, I don't like her touching on me, because she's gay. And I'm like, well, we'll just leave what I said out of it. But, you know, she's like, she's gay. I don't want her touching on me, you know, I don't like gay people. My ex-husband's gay. He took my kids from me. You know, I just- - I just don't want any gay people touching me. And I'm just like, well, you know, we don't know if this person is gay or not. She admitted to me that she was homophobic and said that that's why she did what she did. (Brandon Depo, Ex. 2, pg. 34)

Further, this complaint was not investigated as to whether it was accurate or not, which led to Schlenk's termination.

### III. ARGUMENT

**A. SUMMARY JUDGMENT DOES NOT REQUIRE DISMISSAL**

A motion for summary judgment is based on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 251-252 (1986). The burden falls to the moving party to demonstrate that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the burden of demonstrating that there are no genuine issues of material fact has been met, the other party "must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 248. (citing *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288-289 (1968)). A motion for summary judgment is only proper after a party has been given ample opportunity to complete discovery, and then fails to offer controverting evidence. *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, Ky. App., 579 S.W. 2d 628 (1979). Therefore, Defendant's motion should not be granted.

**B. VIOALTION OF FLSA**

Under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*., employees are required to be compensated for overtime work, unless they are considered "any employee employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C.S. § 213(a)(1). "Executive" is defined as an employee: (1) "Compensated on a salary basis at a rate of not less than $455 per week;" (2) "Whose primary duty is management of the enterprise in which the employee is employed or of a

customarily recognized department or subdivision thereof;" (3) "Who customarily and regularly directs the work of two or more other employees;" and (4) "Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.*" Little v. Belle Tire Distribs.*, 588 F. App'x 424, 426 (6th Cir. 2014)(citing 29 C.F.R. § 541.100).

However, Schlenk has proven that due to the circumstances of her employment, her primary duty was not management of the enterprise, as she was responsible for completing almost every job in the store.

> Q: So the manager job is a full-time job, and you're essentially taking on other jobs also--
>
> A: Yes, ma'am.
>
> Q: --the full-time job?
>
> A: Donations, pricing, sorting, picking up the floor. I mean, it was --it was-- you're trying to do 16 people's job on a daily basis to meet the flagship, if you will, want to be Macy's store. I think we did an overwhelmingly excellent job.

(Schlenk Depo I, Ex. 1, pg. 99, 94) Because Schlenk's store was constantly being understaffed and employees could not complete their own job, the second part of the test for an executive employee fails as Schlenk was performing the job of multiple individuals, duties not required in her job description. Therefore, Defendant's Motion should be denied as to Schlenk's claim of FLSA Violation.

**C. GENDER DISCRIMINATION CLAIM SHOULD NOT BE DISMISSED**

Kentucky law provides that "[i]t is an unlawful employment practice for an employer to fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual

with respect to compensation, terms, conditions or privileges of employment because of the individual's …sex. ..." KRS 344.040(1)(a). For a plaintiff to succeed on a claim of gender discrimination, the plaintiff must first establish a *prima facie* case of discrimination. In order for a plaintiff to show a prima facie case, the Plaintiff must show: 1) Plaintiff was a member of a protected class; 2) Plaintiff was qualified for Plaintiff's job and performed it satisfactorily; 3) despite Plaintiff's qualifications and performance, Plaintiff suffered an adverse employment action; and 4) Plaintiff was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside Plaintiff's protected class. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000)." If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination. The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action." *Id*. at 573. (*Citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)).

The Defendant argues that Schlenk has not proven that she was discriminated against because she was fired for a legitimate reason. However, Schlenk has proven a *prima facie* case of discrimination and has proven that the stated reasons for her termination were not the actual reasons she was terminated. As a female, Schlenk was a member of a protected class. Further, Schlenk suffered an adverse employment action due to her termination. Schlenk was well qualified for her position, as she had previously worked at Goodwill as a manger from 2002 to 2010. (Schlenk Depo I, Ex. 1, pg. 15). Goodwill, specifically the regional manager at the time, reached out to Schlenk about the opportunity to work as the new manager at the new Northfield

store, as Goodwill had expressed interest in Schlenk coming back to work for them and Schlenk did not actually apply for the position. (Schlenk Depo I, Ex. 1, pg. 16) Therefore, Schlenk was obviously well qualified. Finally, Schlenk was replaced by a male employee. Schlenk was replaced by Terry Conwell (Schlenk Depo I, Ex. 1, pg. 103), a male that was described to "look and dress the part". (Schlenk Depo I, Ex. 1, pg. 104). Defendant argues that Schlenk was terminated due to violating Goodwill's policy, however, Schlenk has proven that his was not the actual reason because Schlenk felt that she was being discriminated against. Schlenk felt that because she did not look the part of a manger, like her replacement Conwell did, she was replaced by a male. (Schlenk Depo I, Ex. 1, pg. 104, 108-110)

> Q: Okay. At any time, like related to your dismissal, so you think any of these people discriminated against you because on your gender?
>
> A: Yes, I truly believe so, because they replaced me with--with Terry. I really do. They needed somebody to be the part and look the part that they though, which apparently, it didn't work out because they fired him, too, after a very short time. (Schlenk Depo I, Ex. 1, pg. 108)
>
> Q: I need to understand: In this lawsuit, what is your evidence that someone discriminated against you because of your gender? That's what I need to know. In this August to December time period of 2015, what -- you know, if you bring a lawsuit, you have to put forth the evidence of that.
>
> A: Uh-huh (affirmative).
>
> Q: And I need to know: What is it?
>
> A: I feel, again, due to my gender, that they discriminated against me because they brought a male who, again, looked and dressed the part.
>
> Q: Okay.
>
> A: I'm a female. He's a male. (Schlenk Depo I, Ex. 1, pg. 110)

Therefore, summary judgment as to Schlenk's claim of gender discrimination should be denied.

**D. SCHLENK IS NOT CLAIMING DISCRIMINATION BASED ON SEXUAL ORIENTATION**

Defendant argues that Plaintiff is attempting to bring a claim of discrimination based on sexual orientation, but Schlenk never made a separate claim for sexual orientation in the original complaint (Complaint, DN 1-2). Further, while Kentucky and the 6th Circuit do not recognize sexual orientation as a claim for discrimination, Louisville-Metro Government has passed an ordinance, § 92.06, that makes it" a prohibited and unlawful practice for an employer (1)[t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, age 40 and over, disability, sex, gender identity, or sexual orientation;".

However, Schlenk does argue that Goodwill never investigated C.B.'s claim, which later turned out to be C.B. reporting a claim because she was homophobic. (Brandon Depo, Ex. 2, pg. 34)

> A: She's like, I'm the one that got Kim fired. I'm like well, what did you do? She's like, well, she's gay, I don't like her touching on me, because she's gay. And I'm like, well, we'll just leave what I said out of it. But, you know, she's like, she's gay. I don't want her touching on me, you know, I don't like gay people. My ex-husband's gay. He took my kids from me. You know, I just- - I just don't want any gay people touching me. And I'm just like, well, you know, we don't know if this person is gay or not. She admitted to me that she was homophobic and said that's why she did what she did. (Brandon Depo, Ex. 2, pg. 34)

Plaintiff is not arguing a separate cause of action based on sexual orientation, but Plaintiff argues that there were other employees known to participate in the type of conduct she was terminated for, and these individuals were not terminated. If other people were also participating in the type of activity that Schlenk was alleged to be terminated for, then Goodwill would be violating its own policy by not terminating these employees. This shows that she was indeed discriminated against in order to be replaced by Terry Conwell, a man who looked the part of a manager.

Q: What about other women touching other women, such as coming hair and stuff of that nature?

A: Yeah.

Q: Did that-- was that pretty frequent?

A: Yeah. Just a bunch of girlfriends.

(Brandon Depo, Ex. 2, pg. 79) Further:

Q: If it would have been by video, in your opinion, would there have been other people that should have been terminated that would be on the video for sexual harassment?

A: If you're going by the touchy feely sense of no touchy.

Q: Yes.

(Brandon Depo, Ex. 2, pg. 81)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion be denied.

Respectfully submitted,

s/ Samuel G. Hayward
Samuel G. Hayward
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
Telephone: 502-366-6456
Facsimile: 502-366-4095
Email: samuelghayward@hotmail.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on this, the 4th day of January, 2018, a true and accurate copy of this Agreed Order was sent to the following through the Court's electronic filing system and the parties may access the documents through the electronic filing system:

Caroline L. Pieroni
Dinsmore & Shohl LLP - Louisville

101 S. Fifth Street, Suite 2500
Louisville, KY 40202
502-540-2324
502-585-2207 (fax)
caroline.pieroni@dinsmore.com
*Counsel for Defendant, Goodwill*

                                                                    s/Samuel G. Hayward
                                                                    Samuel G. Hayward