# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:16CV-00601-JHM**

**KIMIKO SCHLENK**                                                    **PLAINTIFF**

**V.**

**GOODWILL INDUSTRIES OF KENTUCKY, INC.**                    **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Goodwill Industries of Kentucky, Inc., for summary judgment [DN 29]. Fully briefed, this matter is ripe for decision.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to

particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Kimiko Schlenk, was employed by Goodwill Industries of Kentucky as a store manager from 2002 through 2010. In 2010, Schlenk left Goodwill on good terms. In July of 2015, Goodwill contacted Schlenk and requested that she return to Louisville, Kentucky, to manage a new Goodwill store. Schlenk accepted the position and returned to Louisville to manage the Northfield flagship store on U.S. Highway 42. Schlenk began work on August 17, 2015, as a salaried employee making $35,000 a year with the opportunity for additional commission based on store performance. Schlenk managed the Northfield store from the time it opened until she was suspended on December 16, 2015. Goodwill terminated Schlenk's employment on December 21, 2015 for violation of its Anti-Harassment, Discrimination and Retaliation Policy and for violations of its Rules of Conduct in the Workplace Policy, specifically the provisions forbidding harassment and unprofessional conduct.

On August 24, 2016, Schlenk filed this current action against Goodwill in the Jefferson Circuit Court alleging claims of violation of the Fair Labor Standards Act ("FLSA"), gender discrimination pursuant to the Kentucky Civil Rights Act, promissory estoppel, and negligent hiring. On September 9, 2016, Goodwill removed the action from the Jefferson Circuit Court to the Western District of Kentucky. By order dated November 18, 2016, this Court dismissed the

promissory estoppel and negligent hiring claims. The FLSA and gender discrimination claims proceeded to discovery. Goodwill now moves for summary judgment on the remaining claims.

## III. DISCUSSION

### A. FLSA Claim

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., requires employers to pay overtime wages to non-exempt employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). See Burton v. Appriss, Inc., 192 F. Supp. 3d 792, 795 (W.D. Ky. 2016), aff'd, 682 Fed. Appx. 423 (6th Cir. 2017). However, this provision does not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To qualify for the executive exception, an employee must be someone:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). Goodwill moves for summary judgment on Schlenk's FLSA claim arguing that Schlenk was exempt from overtime pay because she was an executive employee under the FLSA regulations. Accordingly, the issue for the Court to decide is whether Schlenk is properly classified an executive employee under the FLSA.

The Court finds that the first, third, and fourth factors are undisputed. Schlenk earned more than $455 per week – her base salary was $35,000 per year. Additionally, she customarily and regularly directed the work of two or more other employees. In fact, the record reflects that

she supervised and scheduled 16 employees at her store, including assistant managers, production clerks, and cashiers, and she trained store personnel. Finally, her suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were given particular weight. Schlenk's emails demonstrate that she had extensive involvement in recommending employees for hire, termination, or other status changes, including cutting hours and selecting temporary workers to be full-time employees. The record further reflects that Schlenk handled personnel matters including providing discipline, interviewing candidates, making recommendations on the candidates' placement, evaluating employees, and recommending raises.

Schlenk challenges the second factor – whether Goodwill had management as Schlenk's primary duty while she was employed as an individual store manager. Specifically, Schlenk maintains that because her store was constantly understaffed and employees could not complete their own jobs, the second part of the test for classification as an executive employee fails as Schlenk was performing the job duties of multiple individuals "while also being micromanaged about the store." (Schlenk I Dep. (March 10, 2017) at 94-96, 99.) Schlenk testified that due to the understaffing of her store, she performed pricing, sorting, picking up the floor, donation retrieval -- duties not required in her job description. (Id. at 99.)

"The Sixth Circuit has said that the Secretary of Labor's regulations provided 'detailed guidance' for interpreting the terms 'management' and 'primary duty.'" Leonard v. Dolgencorp Inc., 2011 WL 2009937, at *5–6 (W.D. Ky. May 23, 2011)(quoting Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 503 (6th Cir. 2007)). The regulations define "management" as generally including but not limited to:

> activities such as interviewing, selecting, and training of
> employees; setting and adjusting their rates of pay and hours of

work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The regulations also define the term "primary duty" as "the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

"The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. §541.700(b). "Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id. However, time alone "is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." Id. "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." Id.[1]

---

[1] The regulations also identify the four factors which determine the primary duty of an employee: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Leonard v. Dolgencorp Inc., 2011 WL 2009937, at *5–6 (W.D. Ky. May 23, 2011)(citing 29 C.F.R. § 541.700(a)). "If anything, the revised regulations place less emphasis on the time spent on non-exempt work and the degree of indirect supervision, and place more emphasis on the actual importance of an employee's exempt work." Leonard, 2011 WL 2009937, at *6.

Schlenk testified that she performed the majority of the duties set forth in her job description and spent more than 40 hours a week on managerial duties and took other managerial work home. (Schlenk I Dep. at 95.) These managerial hours represent more than fifty percent of her working hours during a given week which her time sheets show ranged from around 52 to 68 hours per week. The record reflects that the management duties performed by Schlenk included supervising and scheduling employees on a weekly basis, training employees in the Northfield store, performing annual reviews, enforcing policies, handling personnel and discipline matters, promoting Goodwill's programs in the community, dividing up assignments between employees, handling stock rotation, and preparing daily reports for Goodwill management. (Id. at 197-203.)

Furthermore, "the Department of Labor's regulations explicitly recognize her multi-tasking—performing management and nonexempt work simultaneously—as a managerial duty." Leonard, 2011 WL 2009937, at *7–8. Specifically, the regulations note that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106(a). Even when helping with other people's jobs, Schlenk, as manager, was "always supervising and always in charge." Leonard, 2011 WL 2009937, *8. As noted by the regulations, "[g]enerally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods." 29 C.F.R. § 541.106(a). For example,

> an assistant manager in a retail establishment may perform work
> such as serving customers, cooking food, stocking shelves and
> cleaning the establishment, but performance of such nonexempt
> work does not preclude the exemption if the assistant manager's

> primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

29 C.F.R. § 541.106(b).

The record reflects that Schlenk's work directly related to the management or general business operations of Goodwill and she exercised discretion on a sufficiently frequent basis to support a finding that management was a constant responsibility. For these reasons, the Court finds that the executive exemption under the FLSA is applicable to Schlenk's work.

## B. Gender Discrimination

Pursuant to the Kentucky Civil Rights Act ("KCRA"), it is an unlawful practice for an employer 'to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex." KRS § 344.040(1)(a). "Because the language of the KCRA mirrors that of its federal counterpart, courts interpret the KCRA consistently with federal anti-discrimination law." Brown v. Humana Ins. Co., 942 F. Supp. 2d 723, 730 (W.D. Ky. 2013) (citing Brohm v. JH Properties., Inc., 149 F.3d 517, 520 (6th Cir. 1998); Howard Baer, Inc. v. Schave, 127 S.W.3d 589, 592 (Ky. 2003)). Consequently, the Court will analyze this gender discrimination claim under the framework provided Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.

Where, as here, a plaintiff offers only indirect evidence of discrimination, she may establish a prima facie case under Title VII or the KCRA by showing: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." Grace v. USCAR, 521 F.3d

655, 677 (6th Cir. 2008); <u>Battle v. Haywood County Bd. of Educ.</u>, 488 Fed. Appx. 981, 985 (6th Cir. 2012).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 410–11 (6th Cir. 2008); <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d 696, 703 (6th Cir. 2008).  If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000).

The parties agree that Schlenk has set forth a *prima facie* case of gender discrimination. As such, the Court will address the remainder of the <u>McDonnell Douglas</u> test.

### *1. Legitimate, Nondiscriminatory Reason*

Goodwill's Vice President of Logistics and Retail, John Wade, terminated Schlenk on December 21, 2015, for violation of the Anti-Harassment, Discrimination and Retaliation Policy and the Rules of Conduct in the Workplace Policy which forbid unprofessional conduct and harassment, discrimination or retaliation of any kind.  (Schlenk Termination Letter, DN 29-4.) Goodwill maintains it had received more than six complaints, some of which included physical touching, against Schlenk within the three months that she worked for Goodwill.

Specifically, within a month of the Northfield store opening, Goodwill began getting complaints from Schlenk's subordinates about physical interactions and how she treated employees. For example, on October 4, 2015, a Northfield employee made a complaint to Goodwill's "Impact Line," where employees can report to senior management policy violations, harassment issues, or other problems in Goodwill's stores, stating that Schlenk "started pushing

[her] and telling [her] to go back to work." (10/4/15 Impact Line Complaint.) In response to this complaint, Regional Manager Dana Torrey ("Torrey") spoke with Schlenk about the complaint she had received from Schlenk's subordinates.

Other employees lodged complaints through the Impact Line as well regarding Schlenk's management style, her belittling employees in front of customers and other employees, her physical touching of employees, her throwing a bungee cord at an employee, and her harassing an employee. (10/31/15 Impact Line Complaint; 11/14/15 Impact Line Complaint.) Additionally, management was made aware that at least two Northfield store customers contacted Goodwill senior management to make complaints about her. One customer had dubbed her "Little Hitler." (Schlenk I Depo., Ex. 2, p. 171-73.) One of Schlenk's supervisors, Lennea Wooten ("Wooten"), talked with Schlenk about these complaints. Additionally, Schlenk's new regional manager, Mark Daniel ("Daniel"), raised the issue of high employee turnover with Schlenk, noting that seven employees had been hired in the store in the last month and only two of them remained. (12/3/15 E-mail from M. Daniel to K. Schlenk.) Goodwill administrators referred Schlenk to an internal Goodwill counselor to address the series of employee complaints Goodwill had received. (Schlenk I Depo., Ex. 2, p. 178-79.)

The same week that Schlenk was referred to counseling for her interaction with employees, Goodwill Loss Prevention Manager Fess Whitaker ("Whitaker"), during a routine viewing of video footage, saw Schlenk hugging and brushing the hair of two of her subordinates in the manager's office of the Northfield store. (Whitaker Declaration at ¶ 7.) The video of the December 7, 2015, closing shows Schlenk touching the shoulder of, and giving a long hug to, a subordinate in the manager's office. The video also shows Schlenk playing with and brushing the hair of two subordinates. Whitaker thought that one of the subordinates looked

uncomfortable. (Id. at ¶8.)  Whitaker examined another video from that same day and again saw Schlenk touching the same subordinate who looked uncomfortable, by placing her hand over the subordinate's hand on a computer mouse. (Id. at ¶ 9.)  Whitaker sent both of the videos to Goodwill's Human Resources Director for review.

Schlenk's regional manager, Mark Daniel, and his manager, Lennea Wooten, conducted an investigation into the incidents seen on the videos. They interviewed the subordinate who Whitaker thought looked uncomfortable having her hair brushed by Schlenk, and she reported that the touching did make her uncomfortable.  Goodwill suspended Schlenk that same day and brought in a manager from another store, Terry Conwell ("Conwell"), who had previously filled in as the manager at the Northfield store when Schlenk was out. (Schlenk I Depo., Ex. 2, p. 88.) Conwell was later named the manager of the Northfield store.

Daniel and Wooten ultimately recommended that Schlenk be terminated. (Daniel Termination Recommendation, DN 29-30.) Daniel noted that the Anti-Harassment, Discrimination, and Retaliation Policy prohibits inappropriate contact between employees, including "offensive physical actions and/or contact such as rubbing, grabbing, pinching, repeated brushing against another person's body." (Id.) Daniel noted in his recommendation that Schlenk had been disciplined in the past for similar breaches of Goodwill policy. Goodwill's Vice President John Wade, acting on the recommendations of Wooten and Daniel, terminated Schlenk on December 21, 2015, for violation of the Anti-Harassment, Discrimination, and Retaliation Policy and the Rules of Conduct in the Workplace Policy.

### 2. Pretext

Because Goodwill can articulate legitimate, non-discriminatory reasons for its decision, the burden shifts back to Schlenk to establish that the legitimate reason offered by Goodwill was

just a pretext for a decision actually motivated by an unlawful bias against women. To establish

pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not

actually motivate the adverse employment action; or (3) was insufficient to motivate that action.

Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). overruled on

other grounds by Geiger v. Tower Auto., 579 F.3d 614 (6th Cir. 2009). In an effort to establish

pretext, Schlenk maintains that Goodwill's proffered reasons for her termination were not the

"actual reason because Schlenk felt that she was being discriminated against." (Plaintiff's

Response at 8.) In support of her claim, Schlenk cites her deposition testimony:

> Q: I need to understand: In this lawsuit, what is your evidence that someone discriminated against you because of your gender? That's what I need to know. In this August to December time period of 2015, what -- you know, if you bring a lawsuit, you have to put forth the evidence of that.
> A: Uh-huh (affirmative).
> Q: And I need to know: What is it?
> A: I feel, again, due to my gender, that they discriminated against me because they brought a male who, again, looked and dressed the part.
> Q: Okay.
> A: I'm a female. He's a male.
> Q: Okay. Is there anything else?
> A: No.

(Schlenk I Depo., Ex. 2, p. 110.)

First, Schlenk has not met her burden of demonstrating that Goodwill's explanation was

factually false. Goodwill presented numerous complaints regarding Plaintiff's conduct, as well

as a video which recorded the physical contact in question.

Second, the fact that Schlenk "felt" discriminated against because she "heard" after she

was terminated that David Cobb, a person not involved in her termination, wanted Goodwill to

bring in Terry Conwell, "who looked and dressed the part" is insufficient to establish that

proffered reason did not actually motivate the termination. When asked to expand on how this

evidence demonstrated gender discrimination, Schlenk explained that Conwell wore a tie and dress pants to work. (Schlenk I Dep. at 104-106, 110.) Schlenk's subjective belief that she was discriminated against because Goodwill brought in a male who looked and dressed the part is insufficient to show pretext. "[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell v. Toledo Hosp., 964 F.2d 577, 584–85 (6th Cir. 1992).

Finally, Schlenk maintains that Goodwill's stated reasons for her termination were not sufficient to motivate the discharge or were not the actual reason for the discharge because other employees were "known to participate in the type of conduct she was terminated for, and those individuals were not terminated." (Plaintiff's Response, DN 38 at 9.) However, Schlenk's deposition testimony refutes this argument. When asked if she was aware of any "managers viewed on video brushing someone else's hair, hugging people, rubbing shoulders, and putting their hand on someone else's mouse, where there was an investigation and that person was not terminated," she testified that she knew of no other person who engaged in this behavior and was not terminated. (Schlenk II Dep. (April 26, 2017) at 71.)

Additionally, the portions of the deposition testimony of John Brandon, a production clerk for Goodwill, cited by Schlenk do not support her pretext argument. Schlenk accurately notes that Brandon testified that other women at Goodwill have brushed each other's hair. (Brandon Dep. 79.) Significantly, however, Schlenk offers no evidence that these "other women" were managers, that other Goodwill managers engaged in such conduct with subordinates, that other managers engaged in the additional conduct for which Schlenk was reprimanded, or that Goodwill knew of any other managers brushing a subordinate's hair. In fact, the loss prevention manager stated that despite looking at videos of numerous stores daily,

"I had never before, and I have never since, seen a Goodwill manager brush an employee's hair." (Whitaker Declaration at ¶ 12, DN 29-26.)

Accordingly, Plaintiff failed to demonstrate that Defendant's proffered reasons had no basis in fact, did not actually motivate Defendant's challenged conduct, or were insufficient to motivate Defendant's challenged conduct. See Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 268 (6th Cir. 2010). The Court concludes that Plaintiff has not shown Defendant's proffered reason for terminating her was pretext for gender discrimination. Thus, Defendant is entitled to summary judgment as to this claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Goodwill Industries of Kentucky, Inc., for summary judgment on Plaintiff's FLSA and gender discrimination claim [DN 29] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 4, 2018

cc: counsel of record

13